IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KIRK STALLWORTH, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 13 C 6453 |
| OFFICER STEVEN JAHNKE, OFFICER SALVATORE DAVI, and OFFICER LINDSAY ADCOCK, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Kirk Stallworth has sued three Bolingbrook police officers, claiming that they violated his Fourth and Fourteenth Amendment rights when they stopped his vehicle and then arrested him on September 7, 2011.[1] He contends that the officers did not have a proper legal basis to stop or arrest him and that he lost his employment as a result of his unlawful detention. The officers have moved for summary judgment, arguing that that they had probable cause to stop and arrest Stallworth or alternatively that they are entitled to qualified immunity. In addition, officer Adcock (to whom the Court will refer as "Kinsella," her married and current name) argues that she was not involved in the arrest of Stallworth and as such cannot be liable under 42 U.S.C. § 1983. For the reasons stated below, the Court grants summary judgment in favor of all

---

[1] Stallworth's complaint includes a single claim under 42 U.S.C. § 1983, alleging violations of the Fourth and Fourteenth Amendments. His response to defendants' motion for summary judgment makes it clear, however, that he is challenging both the stop of his vehicle and his subsequent arrest.

defendants on plaintiff's false arrest claim and in favor of Kinsella on plaintiff's claim regarding the stop. The Court denies Jahnke and Davi's motion for summary judgment with regard to the stop.

## Background

On September 7, 2011, Kirk Stallworth, who was on parole following a state prison sentence, drove a red Chevrolet Impala to the City of Chicago with his associate Jennifer Hall. The two had agreed to drive to Chicago and purchase drugs from one of Stallworth's contacts—a man known as "Scooby." Upon meeting with Scooby, Stallworth and Hall purchased a half ounce of cocaine. They then made a second stop to buy five or six bags of marijuana. For reasons that are disputed, Hall hid the drugs in her brassiere. Hall says Stallworth instructed her to keep the drugs on her person because she looked more innocent than he did and was therefore less likely to be searched. Stallworth contends that he never instructed Hall to keep the drugs and that she had them on her person because they belonged exclusively to her.

After the purchase, Hall and Stallworth returned to Bolingbrook. Jahnke and Davis had received a tip regarding drug trafficking involving a red vehicle. They spotted Stallworth's vehicle driving down Schmidt Road and began following it. As Stallworth was traveling southbound, a van in front of him was turning and blocking his lane. He swerved to avoid hitting the van. The parties dispute whether he crossed the center line or not. The officers then commenced a traffic stop. They contend that before they approached the vehicle, Stallworth threw a cigarette out of his vehicle. Stallworth says that he did not have a cigarette in his possession and that he did not throw anything out of window.

2

After Stallworth pulled over, Jahnke and Davi approached Stallworth's vehicle and asked him for his license, registration, and insurance. He provided his license, and Hall provided an insurance card which was later deemed invalid. The officers say that while speaking with Stallworth and Hall, they detected the scent of unburnt marijuana. They testified that although they have not received any training on the odor of unburnt marijuana, they were familiar with the smell based on many years of experience as police officers. Upon allegedly detecting the odor, the officers asked Stallworth to exit the vehicle. They initially placed both Stallworth and Hall in the back of their police vehicle, but at some point the officers moved Hall away from Stallworth so that they could speak with her. They say that during that conversation, Hall told them that Stallworth had given her drugs to hide and that she had complied because she was afraid of him.

Kinsella, afemale police officer, arrived on the scene to search Hall. She observed Stallworth sitting on the curb and Hall standing and talking to Jahnke. Kinsella did not speak with Stallworth at the scene. Upon searching Hall, Kinsella found marijuana and crack cocaine concealed within Hall's brassiere. Hall was immediately handcuffed and arrested, as was Stallworth. They were taken to the police station. At the station, Kinsella brought both Stallworth and Hall back to the booking room, where she patted down Hall and removed her handcuffs. She asked Stallworth and Hall if they needed anything else. They indicated that they did not, and Kinsella left to continue her patrol.

Hall was charged with unlawful possession of a controlled substance with intent to deliver and possession of a controlled substance. She later pled guilty to the

possession-with-intent charge, and a judge sentenced her to a four year prison term plus two years of mandatory supervised release. Stallworth was booked on charges of possession of a controlled substance and possession of cannabis based on Hall's statement. He was also charged with a local ordinance violation for tossing a cigarette out of the window of his vehicle. The parties agree that although Stallworth was "charged," he was not prosecuted. The parties do not explain how or when the charges were dropped, but the difference is immaterial for present purposes. Stallworth was also issued traffic citations for improper lane usage and operating and uninsured motor vehicle, and he ultimately pled guilty to those citations.

Stallworth later filed this lawsuit, alleging that the officers violated his Fourth Amendment right to be free from unreasonable search and seizure and his Fourteenth Amendment substantive due process rights. The officers have moved for summary judgment.

## Discussion

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the Court views the evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). On a summary judgment motion, the Court may not make credibility determinations, weigh the evidence, or decide which inference to draw from the facts; those are jobs for a factfinder. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

1.  **Fourth Amendment and qualified immunity standards**

Stallworth brings his claims against the defendant officers under 42 U.S.C. § 1983.  To succeed on a claim under section 1983, a plaintiff must show that the defendant, acting under color of state law, deprived him of a right secured by the Constitution or federal law.  *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006).  Stallworth argues that the defendants violated his Fourth Amendment right to be free from unreasonable search and seizure by stopping him without any proper basis and for arresting him without probable cause to believe that he had committed an offense.  The Fourth Amendment guarantees that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause."  U.S. Const. amend. IV.

To prevail, Stallworth must establish that the officers' conduct constituted a seizure and that the seizure was unreasonable.  *Bielanski v. Cty. of Kane*, 550 F.3d 632, 637 (7th Cir. 2008).  The defendants do not dispute that a seizure took place; rather, they argue that it was reasonable.  In particular, they argue that they had probable cause for the stop based on Stallworth's alleged traffic infractions.  They further argue that they had probable cause for the arrest based what they allegedly perceived to be unburnt marijuana and Hall's statement that she and Stallworth had purchased drugs and that she was holding the drugs for Stallworth.

The defendants argue in the alternative that they are entitled to qualified immunity.  The doctrine of qualified immunity shields a government official from liability for civil damages to the extent that his conduct does not violate "clearly established

statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Under the doctrine of qualified immunity, an officer who mistakenly believed there was probable cause may be shielded from liability "if a reasonable officer could have believed the [arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed." *Abbott v. Sangamon Cty.*, 705 F.3d 706, 714 (7th Cir. 2013). Referred to as "arguable probable cause," this inquiry is separate from the probable cause inquiry, in that it considers "whether it would be clear to a reasonable official that his or her conduct was unlawful in the situation." *McComas v. Brinkley*, 673 F.3d 722, 725 (7th Cir. 2012). In other words, "[a]rguable probable cause exists when a reasonable officer could *mistakenly* have believed that he had probable cause to make the arrest." *Id.*

**2. Probable cause**

A police officer has probable cause to arrest a person when "the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the [person] had committed an offense." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). Probable cause is determined by the facts "as they would have appeared to a reasonably prudent person in the position of the arresting officer." *Id.*

**A. The traffic stop**

An officer's stop of an automobile is a seizure under the Fourth Amendment that is justified if, among other things, there is probable cause to believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996). Even a minor traffic infraction can support a finding of probable cause for a stop. *United States*

*v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005). If the circumstances confronting the police officer support a reasonable belief that the automobile's driver has committed a traffic offense, then probable cause exists. *See, e.g., United States v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000).

Officers Jahnke and Davi contend that they had probable cause to stop Stallworth's call based on what they refer to as "improper lane usage." Jahnke testified that Stallworth's vehicle "committed a traffic violation," and when asked to describe it, he said this:

> Q: What kind of traffic violation was committed?
>
> A: Improper lane usage.
>
> Q: When you saw that this traffic violation was committed, what did you do?
>
> A: Upon the vehicle committing the traffic violation, we conducted a traffic stop on the vehicle.

*See* Def.'s Ex. A (Jahnke Dep.) at 10. Jahnke provided no information or details about the "improper lane usage." Davi's testimony was a bit more descriptive:

> A: We initiated a traffic stop on [Stallworth] after observing a motor vehicle violation.
>
> Q: What was the motor vehicle violation?
>
> A: Improper lane usage.
>
> Q: Explain what you mean that there was an improper lane usage on September 7, 2011.
>
> A: Schmidt Road is a divided two lane road with a broken yellow dotted line. He was heading southbound on Schmidt when he crossed over the center dotted line into the northbound lanes and then back into the southbound lanes.

*See* Def.'s Ex. B (Davi dep.) at 11.

Thus the only evidence offered by defendants describing what constituted the

7

traffic violation that they claim Stallworth committed was that "he crossed over the center dotted [yellow] line into the northbound lanes." *Id.* Stallworth, however, testified that although he swerved to avoid a collision with the vehicle in front of him, he *did not* go into the oncoming lane of traffic. *See* Def.'s Ex. C (Stallworth dep.) at 47:20-24 ("Q: As a result of that, did you decide you had to swerve into the oncoming lane? A: I didn't go into the incoming lane . . . I just moved over some. You know what I'm saying?"). Thus his testimony squarely conflicts with Davi's testimony that Stallworth went "into the northbound lanes."

Defendants point out that Stallworth demurred when asked a further question, not about whether he went into the oncoming lane of traffic, but about whether he might have crossed the center line by a little. Specifically, Stallworth gave the following testimony:

> Q: Okay. When you say you "moved over some," did you cross the centerline maybe a little bit?
>
> A: I don't know. I don't know.

*See id.* at 48:1-4. This, however, does not alter the fact that Stallworth's testimony quoted earlier directly contradicts the only testimony by defendants regarding what Stallworth allegedly did that warranted the traffic stop. Specifically, Davi testified that Stallworth crossed over into the oncoming lanes; Stallworth testified that he did not. In short, there is a genuine factual dispute over the basis asserted as probable cause for the stop of Stallworth's vehicle.

The Court also notes that defendants have not identified the particular statute (or perhaps the particular ordinance) for which Stallworth was cited. The Court's own review of the Illinois Vehicle Code suggests that there may not be a bright-line rule that

bars crossing a lane line marker. *See, e.g.,* 625 ILCS 5/11-709(a) (regarding roadways with marked lanes; "A vehicle shall be driven *as nearly as practicable* entirely with a single land and shall not be moved from such lane *until the driver has first ascertained that such movement can be made with safety.*) (emphasis added); *id.* 11-701(a) (requiring a vehicle to be driven on the right half of the roadway, but including exceptions, such as "[w]hen an obstruction exists making it necessary to drive to the left of the center of the roadway," so long as the driver yields to oncoming vehicles).

Defendants are not entitled to summary judgment regarding the stop on the basis of qualified immunity for the same reason they are not entitled to summary judgment on the question of probable cause. The same direct factual contradiction between Davi's testimony and Stallworth's that prevents the Court from determining, on summary judgment, whether there was probable cause to stop Stallworth's vehicle also precludes the Court from determining, on summary judgment, whether there was arguable probable cause. Where there is a genuine factual dispute like this one, qualified immunity does not require or even permit a court to simply take a police officer's word for what happened and ignore contradictory evidence.

### B. Probable cause for the arrest

Stallworth also contends that the officers did not have probable cause to arrest him. He disputes defendants' contention that they saw him throw a cigarette butt out of his window and their contention they were able to smell unburnt marijuana, but these disputes are beside the point. The real issue concerns defendants' contention that Hall told them that the drugs concealed on her person were Stallworth's—a contention that Stallworth does not dispute. *See* Pl.'s Resp. to Defs.' R. 56.1 Stat. of Facts ¶¶ 36-39.

9

Here the Court agrees with defendants. "When police officers obtain information from an eyewitness or victim establishing the elements of a crime, the information is almost always sufficient to provide probable cause for an arrest in the absence of evidence that the information, or the person providing it, is not credible." *Pasiewicz v. Lake Cty. Preserve Dist.*, 270 F.3d 520, 524 (7th Cir.2001). To be sure, this rule is not without exceptions: "when, for example, the police know that the accuser may harbor a grudge against the accused . . . or when it is doubtful that the allegations (even if true) add up to a crime, then some follow-up may be required to make an arrest 'reasonable.'" *Askew v. City of Chic.*, 440 F.3d 894, 895 (7th Cir. 2006). But in this case none of those exceptions applies. Whether or not Hall's statements would have been enough to convict Stallworth without more, the record reveals no basis that would lead the police to doubt her credibility in a way that would have required them to do more or to uncover more evidence before arresting Stallworth on a charge of possession of a controlled substance. The Court concludes that no reasonable jury could find that probable cause was lacking to support Jahnke and Davi's arrest of Stallworth.

In sum, a trial is required regarding the legality of the traffic stop, but defendants are entitled to summary judgment on the legality of their arrest of Stallworth. The question of what damages Stallworth might be entitled to recover if he prevails on his claim regarding the stop—in other words, whether principles of proximate cause would permit him to recover damages arising from his detention on the basis that it was proximately caused by the stop—is an issue for another day.

### 3. Fourteenth Amendment

Stallworth also alleges that his wrongful seizure and detention violated his Fourteenth Amendment substantive due process rights. But where "the nature of the allegations fall clearly within the ambit of those activities regulated by the Fourth Amendment (even if not clearly within the ambit of the Fourth Amendment's protections)," there is no need for the Court to further analyze the case under the strictures of the Fourteenth Amendment. *Kernats v. O'Sullivan*, 35 F.3d 1171, 1182 (7th Cir. 1994) (affirming the district court's dismissal of a Fourteenth Amendment claim that overlapped with a Fourth Amendment claim). Stallworth has conceded this point, Pl.'s Resp. at 5, and in any event his due process claim adds nothing to his Fourth Amendment claim. Defendants are entitled to summary judgment on the Fourteenth Amendment claims.

### 4. Officer Kinsella

Stallworth has not offered evidence from which a reasonable jury could find that Officer Kinsella participated in the traffic stop or, for that matter, in his arrest, as is generally required for liability under section 1983. *See, e.g., Kelly v. Mun. Courts of Marion Cty.*, 97 F.3d 902, 909 (7th Cir. 1996). On the record before the Court, it is undisputed that Officer Kinsella arrived on the scene after the traffic stop and that she had no involvement in Stallworth's arrest. In his response to defendants' summary judgment motion, Stallworth has made no argument regarding Kinsella's liability. He has thus essentially conceded Kinsella's argument in favor of summary judgment.

### Conclusion

For the foregoing reasons, the Court grants defendants' motion for summary

judgment in part and denies it in part [dkt. no. 60].  Defendant Kinsella is entitled to summary judgment on all of plaintiff's claims, and defendants Jahnke and Davi are entitled to summary judgment on plaintiff's Fourth Amendment false arrest claim and his Fourteenth Amendment claims.  The Court denies defendants' motion for summary judgment on plaintiff's Fourth Amendment claim against Davi and Jahnke regarding the traffic stop.  The case is set for a status hearing on August 9, 2016 at 9:00 a.m., for the purpose of setting a trial date on the remaining claim and discussing the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  July 29, 2016